Filed 6/30/23  P. v. Smith CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D081410 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN399026) |
| ANDREW THOMAS SMITH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Sim von Kalinowski, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION

A jury convicted Andrew Thomas Smith of first degree murder (Pen. Code, § 187, subd. (a)),[1] and returned a true finding on an allegation that he personally and intentionally discharged a firearm proximately causing death (§ 12022.53, subd. (d)), after Smith shot his wife in the neck and killed her. The trial court sentenced Smith to an indeterminate prison term of 50 years to life, including a term of 25 years to life for the murder conviction and a consecutive term of 25 years to life for the firearm enhancement.

In a prior appeal, we affirmed the judgment, in part, but remanded the matter to allow the trial court to exercise its sentencing discretion to strike the firearm enhancement and, in its place, impose an uncharged lesser firearm enhancement pursuant to *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*).[2] In this second appeal, Smith contends the trial court abused its discretion because it declined to strike the firearm enhancement altogether. Alternatively, he contends the court abused its discretion by failing to strike the firearm enhancement and, in its place, impose a lesser firearm enhancement under section 12022.53, subdivisions (b) or (c), or section 12022.5. We discern no abuse of discretion. Therefore, the judgment is affirmed.

---

[1]    All further statutory references are to the Penal Code.

[2]    When Smith was first sentenced, there was a split of authority among the Courts of Appeal regarding whether a trial court may strike a section 12022.53, subdivision (d) firearm enhancement and impose a lesser firearm enhancement in its place under section 12022.53, subdivisions (b) or (c). In *Tirado*, the Supreme Court determined a court may strike a section 12022.53, subdivision (d) enhancement and replace it with a lesser uncharged enhancement under section 12022.53, subdivisions (b) or (c). (*Tirado*, *supra*, 12 Cal.5th at p. 700.)

## II

## BACKGROUND

A. *Factual Background*

The following summary of facts is taken from the factual background section of this court's opinion in the first appeal, as well as the reporter's transcripts from Smith's trial. (*People v. Smith* (Aug. 3, 2022, D079350) [nonpub. opn.].)

Smith shot his wife, Jean Smith (hereafter, Jean), in the neck and killed her in April 2019. At the time of the murder, Smith and Jean had been married for nearly 20 years. The couple had a tumultuous relationship. Jean would often drink and verbally abuse Smith. At Smith's trial, three neighbors testified they could hear screaming and yelling from the Smith home multiple times a week. One neighbor testified that Jean hurled "verbal abuse" at Smith, like "you should kill yourself." Another neighbor testified she heard Smith yelling and using profanities, but not as often as Jean.

During the trial, multiple videos depicting Jean's drunken behavior were played for the jury, including videos in which Jean called Smith "fat, ugly, and stupid," and a "baby ass," among other belittling phrases. The jury was also shown a video, which depicts Smith calling Jean a "horrible bitch," "stupid idiot," and other disparaging names. In the video, Smith also told Jean, "Why – why don't you just shoot yourself in the fucking head?"

Smith testified about the circumstances on the day of Jean's murder. He testified he and Jean had a good day together. They even hugged, kissed, and watched a movie. However, he and Jean both got "quite drunk" as the day progressed. Around 5:40 p.m., they sat at their respective desks where Jean watched videos on her computer and Smith played solitaire on his computer. A fight broke out when Jean asked her adult son to buy more

alcohol with her credit card.  Smith testified he did not want Jean's son to use the credit card because Jean's son was diabetic and he might use it to buy sugary food.  Smith testified he offered to give Jean's son just enough cash to buy alcohol.  Jean became "furiously angry," "yelling and screaming" at him in the "regular" way.  Smith testified he stood up from his desk intending to get cash for Jean's son.  Instead, he took a firearm out of his pocket, turned towards Jean, and shot her in the neck as she sat facing away from him. Smith said he "lost [his] temper" and "had enough at that time."

Smith then called 911 and calmly reported that he had killed his wife. Smith showed no remorse for the murder; instead, he expressed concern about spending the rest of his life in jail and never sleeping in his own bed again.  The sheriff's deputies arrived at the Smith residence to find Jean slouched over in her chair with blood on her shoulders, still clutching her computer mouse.  Smith was arrested and charged with first degree murder.

After trial, the jury found Smith guilty of deliberate and premeditated first degree murder and found true an allegation that he personally and intentionally discharged a firearm and proximately caused his wife's death. Thereafter, Smith asked the trial court to reduce the first degree murder conviction to a voluntary manslaughter conviction or, in the alternative, a second degree murder conviction.  The court denied the motion.

Smith appealed the first degree murder conviction, which this Court affirmed.  (*Smith, supra*, D079350.)  As part of his appeal, Smith asserted he was entitled to a resentencing hearing so that the trial court may exercise its informed sentencing discretion to strike the firearm enhancement and, in its place, impose a lesser uncharged firearm enhancement, in light of *Tirado, supra*, 12 Cal.5th 688.  We agreed with Smith on this particular issue and remanded the matter for resentencing purposes only.  (*Ibid.*)

4

B. *Resentencing Hearing*

At the resentencing hearing, Smith urged the trial court to strike the section 12022.53, subdivision (d) firearm enhancement altogether and to resentence him based solely on the murder charge. Alternatively, Smith asked the court to strike the firearm enhancement and, in its place, impose a lesser uncharged firearm enhancement under section 12022.53, subdivisions (b) or (c), or section 12022.5. Smith argued the greater enhancement should be stricken altogether or replaced by a lesser uncharged enhancement because the murder was connected to his own prior victimization under section 1385, subdivision (c)(2)(E). He argued he was living in a "vile environment" due to his wife's abusive behavior. He also asserted he posed no danger to the community based on his age, his background, and the circumstances of the offense. In particular, he noted he was already 61 years old, he had no prior record, and he was already serving a substantial 25-year-to-life sentence for the murder charge alone.

The prosecution argued the murder was not related to Smith's purported prior victimization, as he claimed, because Smith and Jean had "mutual" arguments back and forth with one another. The prosecution further argued Smith posed a threat to the safety of the public and any future partner should the court strike the enhancement, given that Smith owned multiple firearms and murdered his intimate partner, Jean.

The trial court declined to strike the section 12022.53, subdivision (d) firearm enhancement and resentenced Smith to 50 years to life, including a term of 25 years to life for the murder charge and a consecutive term of 25 years to life for the firearm enhancement. In coming to this finding, the court considered the nature of the present offense, Smith's background, and other individualized considerations. The court noted Smith had no prior criminal

history and cooperated with the police. However, it found the nature of the present offense was the extremely violent and serious murder of Smith's wife.

The court also assessed the relevant mitigating factors set forth in section 1385, subdivision (c) to determine whether the firearm enhancement should be stricken. The court found that only one mitigating circumstance enumerated in section 1385, subdivision (c), might be relevant—Smith's claim that the murder was connected to his alleged prior victimization. (§ 1385, subd. (c)(2)(E).) The court noted Jean was the "primary perpetrator" of the domestic violence that occurred during the couple's marriage, but Smith also participated in the verbally abusive behavior.

The court found that dismissal of the firearm enhancement would endanger public safety as well. The court noted Smith acted with premeditation when he shot his wife, as she sat facing away from him, defenseless. The court noted Smith's "extreme lack of remorse" after the murder, including during the 911 call in which "he focused on himself" and whether he would ever sleep in his bed again. The court also stated Smith had viable options to get out of his contentious marriage, such as divorce or separation, and he took none of them. The court stated Smith's choice to murder Jean was a "total overreaction" to a fight that was "no different" than any other fight the couple had on any "other day for many years." Because the court found dismissal of the enhancement would endanger public safety, the court declined to dismiss the enhancement altogether.

The court then assessed whether to strike the section 12022.53, subdivision (d) firearm enhancement and impose a lesser firearm enhancement in its place. The court again considered the circumstances of the present crime and the defendant. As the court explained, the crime "involved great violence" and "a high degree of callousness." The court noted

6

Smith was "equally verbally abusive" as Jean in "the days leading up to the shooting," exhibited a "total lack of emotion and remorse" on the 911 call, and failed "to render any aid to the victim." The court found the "great violence" of the crime, the "execution-style" nature of the shooting, the victim's defenselessness during the crime, and the extreme callousness Smith exhibited after the crime heavily outweighed Smith's prior clean record and his status as the secondary verbal abuser. The court determined these factors called "for the longest punishment available in the Court's discretion over any lesser punishment." Thus, the court declined to strike the greater enhancement and impose a lesser uncharged enhancement in its place.

Smith appeals the judgment of conviction entered following the resentencing proceedings.

## III

## DISCUSSION

Smith contends the trial court abused its discretion in declining to strike the section 12022.53, subdivision (d) firearm enhancement altogether or, alternatively, to strike the enhancement and impose a lesser firearm enhancement under section 12022.53, subdivisions (b) or (c) or under section 12022.5. Smith argues the court erred in finding that his mitigating circumstances did not warrant a dismissal or reduction of the enhancement. Relatedly, Smith argues the court erroneously determined that dismissal of the firearm enhancement would likely result in a risk to public safety. We disagree with both of these arguments.

A. *Legal Principles*

"Section 12022.53 was first enacted in 1997 as part of the state's 'Use a Gun and You're Done' law. [Citation.] The statute sets out 'sentence enhancements for personal use or discharge of a firearm in the commission' of

7

specified felonies.  [Citation.]  Section 12022.53, subdivision (a) lists the felonies to which the section applies.  Section 12022.53(b) mandates the imposition of a 10-year enhancement for personal *use* of a firearm in the commission of one of those felonies; section 12022.53(c) mandates the imposition of a 20-year enhancement for personal and intentional *discharge* of a firearm; and section 12022.53(d) provides for a 25 year-to-life enhancement for personal and intentional discharge of a firearm *causing great bodily injury or death* to a person other than an accomplice."  (*Tirado, supra*, 12 Cal.5th at pp. 694–695, fn. omitted.)  Section 12022.53, subdivision (h) provides in part that a court "may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."  Further, as *Tirado* clarified, a court may strike a section 12022.53, subdivision (d) enhancement found true and impose a lesser uncharged enhancement under section 12022.53, subdivisions (b) or (c), in its place.  (*Tirado*, at p. 692.)

Section 12022.5 provides that "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."  Whereas section 12022.53 applies only when a defendant has perpetrated a felony enumerated in section 12022.53, subdivision (a), section 12022.5 applies to "all felonies ...."  (*People v. Ledesma* (1997) 16 Cal.4th 90, 96.)

Section 1385, subdivision (a) states, "[A] judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."  The phrase, "in the furtherance of justice," is not defined by statute, but case law has explained that it requires "consideration both of the constitutional rights

8

of the defendant, and the interests of society represented by the People, in determining whether there should be a dismissal." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530, italics omitted.)  Section 1385 applies to a motion to dismiss "the entire action or, as here, only an enhancement allegation." (*People v. Bonnetta* (2009) 46 Cal.4th 143, 145-146.)

"In determining whether to dismiss a firearm enhancement under section 12022.5 or 12022.53, a court considers the same factors considered ' "when handing down a sentence in the first instance." ' " (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 497.)  These factors include the general objectives of sentencing (Cal. Rules of Court, rule 4.410),[3] circumstances in aggravation and mitigation (Rules 4.421, 4.423), and factors affecting imposition of enhancements (Rule 4.428).  The court is deemed to have considered all relevant sentencing factors set forth in the rules unless the appellate record affirmatively demonstrates otherwise.  (Rule 4.409.)

Additionally, due to recent amendments implemented by Senate Bill No. 81 (Stats. 2021, ch. 721, § 1), the sentencing court must consider applicable mitigating circumstances under section 1385, subdivision (c), to determine whether to strike or reduce the enhancement in the furtherance of justice.  "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)  Only one mitigating circumstance is relevant to this appeal.  It requires the court to consider and give great weight to evidence that "[t]he current offense is connected to prior victimization ...."

---

[3]    Subsequent references to Rules are to the California Rules of Court.

9

(*Id.*, subd. (c)(2)(E).) " 'Prior victimization' means the [defendant] was a victim of intimate partner violence ... or the [defendant] has experienced psychological or physical trauma, including, but not limited to, abuse ...." (*Id.*, subd. (c)(6)(B).)

We review the trial court's decision not to strike or reduce a sentence enhancement under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 371 (*Carmony*).) Two guiding principles govern our review. First, the appellant holds the burden to " ' "clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, ' "a decision will not be reversed merely because reasonable people might disagree." ' " (*Id.* at pp. 376–377.) Under the highly deferential abuse of discretion standard of review, we will uphold the decision of the lower court if there is "a reasonable or even fairly debatable justification under the law for the court's decision." (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322, citing *Gonzales v. Nork* (1978) 20 Cal.3d 500, 507.)

B. *Application*

As noted, Smith contends the trial court abused its discretion in declining to strike the firearm enhancement altogether; or, alternatively, in declining to strike the firearm enhancement and, in its place, impose a lesser one. He asserts the court gave insufficient consideration to the mitigating circumstances outlined in Rule 4.423(a)(2) and (a)(3), and section 1385, subdivision (c)(2). In particular, he asserts the following factors weighed in favor of a lesser firearm enhancement, or no enhancement at all: (1) Jean was the initiator or aggressor of the incident (Rule 4.423(a)(2)); (2) Smith

10

experienced "prior victimization" from Jean's physical and verbal abuse
(§ 1385, subd. (c)(2)(E)); (3) Smith committed the murder "because of an
unusual circumstance, such as great provocation, that is unlikely to recur,"
(Rule 4.423(a)(3)); (4) Smith has no prior criminal or violent history;
(5) Smith immediately called 911, assumed responsibility for the offense, and
cooperated with the police; and (6) Smith will be at least 80 years old by the
time he completes his sentence for the murder charge alone.

The record discloses that the court gave ample consideration to these
mitigating circumstances and acted well within its discretion in concluding
that, *overall*, they did not warrant striking the firearm enhancement due to
the existence of numerous aggravating circumstances.  For instance, the
court acknowledged Jean was the "primary verbal abuser" in the couple's
relationship, but remarked that Smith "had become equally verbally abusive"
towards Jean in the leadup to the murder.  The court also noted Smith had
no prior record and cooperated with the police.  (Rule 4.423(b)(1), (b)(8).)  But,
as the court found, the "great violence" of the "execution-style" shooting, the
defenselessness of the victim, and Smith's "extreme callousness" weighed
strongly against striking the firearm enhancement.  (Rule 4.421(a)(1), (a)(2),
(a)(3).)  Thus, the appellate record shows the trial court assessed all the
competing factors and came to a reasoned determination not to strike the
firearm enhancement.  Although Smith disagrees with the court's balance of
the relevant factors, a " ' "decision will not be reversed merely because
reasonable people might disagree." ' "  (*Carmony*, *supra*, 33 Cal.4th at p. 377,
quoting *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978.)

The appellate record also shows the trial court appropriately assessed
and gave due weight to the pertinent mitigating factors set forth in
section 1385, subdivision (c)(2).  Only one mitigating factor, Smith's alleged

11

"prior victimization," potentially applied to this case. (§ 1385, subd. (c)(2)(E).) The court found that Jean was the primary perpetrator of domestic abuse, but also, importantly, that Smith verbally abused Jean as well. Thus, the court considered and gave weight to this mitigating factor in the exercise of its sentencing discretion. But it properly declined to strike the enhancement, given Smith's joint status as an aggressor and the extraordinarily serious aggravating circumstances outlined above.

Even if Jean's murder was related to Smith's prior victimization, the existence of a mitigating circumstance in section 1385, subdivision (c)(2) does not weigh greatly in favor of dismissing an enhancement if "dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Here, the court properly found that striking the enhancement would endanger public safety. As the court noted during resentencing, the murder was not "understandable in any sense" because it was prompted by a mere everyday argument, and it could have been avoided altogether if Smith had simply separated from his wife. Further, Smith exhibited an "extreme lack of remorse" during the 911 call. Given the sheer senselessness of Smith's violent conduct and his utter lack of remorse after he murdered Jean, the court properly determined that the dismissal or reduction of the firearm enhancement would pose a threat to public safety. Thus, Smith's alleged prior victimization did not weigh greatly in favor of dismissing the firearm enhancement.

IV

DISPOSITION

The judgment is affirmed.

12

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.